**THE UNITED STATES DISTRICT COURT
NORTHER DISTRICT OF OHIO
EASTERN DIVISION**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | CASE NO.:  5:26CR160 |
| | ) | |
| Plaintiff, | ) | JUDGE JOHN ADAMS |
| | ) | |
| v. | ) | **ORDER** |
| | ) | |
| GRANT T. WILCOX, | ) | |
| | ) | (Resolves Doc. 23) |
| Defendant. | ) | |

This matter comes before the Court on Defendant Grant Wilcox's motion seeking a to suppress the evidence seized from his residence.  Doc. 23.  Upon review, the motion is DENIED.

Wilcox contends that the affidavit failed to establish probable cause to search the residence at issue.  "Probable cause is defined as 'reasonable grounds for belief, supported by less than prima facie proof but more than mere suspicion.'"  *United States v. Smith*, 182 F.3d 473, 477 (6th Cir. 1999) (quoting *United States v. Bennett*, 905 F.2d 931, 934 (6th Cir. 1990)). The test for probable cause is simply whether "there is a fair probability that contraband or evidence of a crime will be found in a particular place." *United States v. Lumpkin*, 159 F.3d 983, 986 (6th Cir. 1998) (internal quotation marks omitted). The existence of probable cause must be determined using a "totality of the circumstances" test; that is, the question is whether, given all of the facts known to the police officer, there is a fair probability that contraband or evidence will be found in a particular place. *Illinois v. Gates*, 462 U.S. 213, 238 (1983).

An affidavit in support of "a search warrant need not establish beyond a reasonable doubt that incriminating evidence will be found on the premises to be searched." *United States v. Blakeney*, 942 F.2d 1001, 1025 (6th Cir. 1991).  However, probable cause does require a

"substantial basis" for concluding that evidence of a crime will be found at the location to be searched. *Id*. (citing *Gates*, 462 U.S. at 238). In other words, there must be a "'nexus between the place to be searched and the evidence sought.'" *United States v. Brooks*, 594 F.3d 488, 492 (6th Cir. 2010) (quoting *United States v. Carpenter*, 360 F.3d 591, 594 (6th Cir. 2004)). That nexus can be inferred from "the type of crime being investigated, the nature of things to be seized, the extent of an opportunity to conceal the evidence elsewhere and the normal inferences that may be drawn as to likely hiding places." *United States v. Williams*, 544 F.3d 683, 687 (6th Cir. 2008) (internal quotation marks and citations omitted).  The belief "that the items sought will be found at the location to be searched must be supported by less than prima facie proof but more than mere suspicion."  *Id.* at 686 (quotation omitted).

Wilcox's argument appears to be focused on his belief that the affidavit in support of the search warrant "relied on conclusory generalizations, drug-courier profiles, and boilerplate assertions rather than particularized facts showing that evidence of drug trafficking would be found inside the home."  Doc. 23 at 1.  Wilcox is correct that the affidavit does include several generalizations regarding the habits of drug dealers and the use of stash houses.  However, none of that information is necessary to find that the affidavit established a nexus between the residence and the likelihood that evidence of drug trafficking would be found there.

Initially, the affidavit establishes beyond doubt that a parcel addressed to the target residence was found to contain 140 orange tablets that field tested positive for methamphetamine.[1]  Moreover, the package was tracked more than 400 times while in transit.

---

[1] The Court would note that in the context of an anticipatory warrant, the item being place in the mail addressed to the target residence would, in and of itself, establish the necessary nexus.  *See*, *United States v. Hendricks*, 743 F.2d 653, 655 (9th Cir. 1984) (finding that if a parcel "were on a sure course to the house, for example, in the mail addressed to the home address" then probable cause to search the residence would be established).  While this context varies, the parcel being placed in the mail addressed to the target residence is undoubtedly relevant to the Court's evaluation of whether a nexus was established.

While the affidavit does not contain evidence of who was tracking the item, the affidavit notes that Wilcox showed up at 7:00 a.m. at the post office, before the lobby was even open to the public, in an attempt to retrieve the parcel.  As such, the affidavit contains a strong inference that Wilcox was electronically tracking the item.  Additionally, the affidavit established that Wilcox left from the target residence at roughly 9:08 a.m. to obtain the parcel from the post office. Rather than drive home, Wilcox drove to a nearby gas station and engaged in what officers believed to be countersurveillance.

While the details of what Wilcox did at the gas station – watching traffic before returning to his vehicle – may appear innocuous, his later conduct supports the conclusion that he was attempting to determine where he was being surveilled.  Specifically, after leaving the gas station, Wilcox drove to the area near the target residence.  However, rather than return home, Wilcox drove past the residence twice before returning to the post office.  Wilcox entered the post office, placed the parcel on the counter, and was then detained by investigators.  Upon being detained, Wilcox stated, "This package isn't mine and I don't recognize the sender."

Based upon the above, the affidavit amply demonstrated a nexus between the target residence and the likelihood that evidence of drug trafficking would be located there.  First, a parcel containing methamphetamine was placed in the mail to be delivered to the target residence.  Circumstantial evidence strongly suggests that Wilcox was tracking the progress of the parcel from the target residence.[2]  In addition, Wilcox's actions following his retrieval of the package suggest he was actively avoiding returning to the residence because he believed he was under surveillance.  His efforts to keep investigators away from the target residence only serve to

---

[2] As noted above, it would be difficult to understand how Wilcox knew he had received a parcel from a sender he later claimed that he did not know unless he was actively tracking the package.  Further, given that he departed from the target residence to the post office, it strongly suggests that Wilcox was tracking the parcel from the residence.

reinforce the remaining evidence that supports that evidence of drug trafficking would be found in the residence.  Accordingly, Wilcox's motion to suppress is DENIED.

IT IS SO ORDERED.


July 22, 2026                                             /s/ Judge John R. Adams
                                                                JUDGE JOHN R. ADAMS
                                                                UNITED STATES DISTRICT COURT